E-filing

*ORIGINAL FILED*
*AUG - 7 2007*
*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*OAKLAND*

1  THOMAS E. ALBORG (SBN 056425)
   MICHAEL J. VEILUVA (SBN 100419)
2  DARRELL C. MARTIN (SBN 191773)
   ALBORG, VEILUVA & EPSTEIN LLP
3  200 Pringle Avenue, Suite 410
   Walnut Creek, CA 94596
4  Tel: 925-939-9880
   Fax: 925-939-9915
5
6  Attorneys for Defendant
   STEWART TITLE GUARANTY COMPANY
7
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10

*ADR*

11 | COUNTRYWIDE HOME LOANS, INC.,          Case No.
   | A New York corporation
12 |                                        **C07-04047**
   |         Plaintiff,
13 |                                        **NOTICE OF REMOVAL OF ACTION**
   |  vs.                                   **UNDER 28 U.S.C. §1441(b)**
14 |                                        **(DIVERSITY)**
   | STEWART TITLE GUARANTY COMPANY,
15 | a Texas corporation;
16 |         Defendant.
17

18  TO: THE CLERK OF THE ABOVE-ENTITLED COURT:

19      PLEASE TAKE NOTICE that defendant STEWART TITLE GUARANTY COMPANY

20  ("STEWART") hereby removes to this Court the state court action described below.

21      1.  On June 6, 2007, an action was commenced in the Superior Court of California,

22      County of Contra Costa, entitled *Countrywide Home Loans, Inc. v. Stewart Title*

23      *Guaranty Company,* case number C07-01108.  A copy of the complaint is

24      attached as Exhibit A.

25      2.  Defendant STEWART was served with the summons and complaint on July 9,

26      2007.

27      3.  This action is a civil action over which this Court has original jurisdiction under

28      28 U.S.C. Sec. 1332, and is one which may be removed to this Court by

1    defendant(s) pursuant to the provisions of 28 U.S.C. Sec. 1441(b) in that it is a

2    civil action between citizens of different states and the matter in controversy

3    exceeds the sum of $75,000, exclusive of interest and costs as reflected in the

4    attached Complaint.

5    4.    Defendant STEWART was, at the time of filing of the Complaint, incorporated in

6    the State of Texas with its principal place of business in Houston, Texas.

7    5.    Defendant is informed and believes that Plaintiff was, at the time of filing of the

8    Complaint, a New York corporation doing business in the State of California.

9

10   Dated: August 8, 2007                    ALBORG, VEILUVA & EPSTEIN LLP

11

12   By: _____
     MICHAEL J. VEILUVA
13   DARRELL C. MARTIN
     Attorneys for Defendant
14   STEWART TITLE GUARANTY COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Facsimile Document
See Local Rule 27

1  MICHAEL R. PFEIFER, SBN 072245
2  JAMES P. FINERTY  SBN 115611
   LIBBY WONG SBN 173824
3  PFEIFER & REYNOLDS, LLP
   765 The City Drive, Suite 380
4  Orange, CA 92868
   Telephone: (714) 703-9300
5  Fax: (714) 703-9303

6  Attorneys for Countrywide Home Loans, Inc.

7

8

9                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                         COUNTY OF CONTRA COSTA

11

12  COUNTRYWIDE HOME LOANS, INC., a    )  Case No.  C 07      0 1 1 0 8
13  New York corporation;              )
                                       )
14                                     )  Assigned to
                    Plaintiff,         )  Department:
15                                     )
        v.                             )  COUNTRYWIDE HOME LOAN, INC.'S
16                                     )  COMPLAINT FOR:
    STEWART TITLE GUARANTY             )
17  COMPANY, a Texas corporation; and DOE 1 )  BREACH OF CONTRACT; TORTIOUS
    through DOE 20, inclusive,         )  BREACH OF IMPLIED COVENANT OF
18                                     )  GOOD FAITH AND FAIR DEALING
                                       )  (INSURANCE BAD FAITH)
19                  Defendants.        )
                                       )
20                                     )
                                       )
21                                     )      PER LOCAL RULE 5 THIS
                                       )      CASE IS ASSIGNED TO
22                                     )
                                       )
23                                     )
                                       )
24                                     )
                                       )
25                                     )
                                       )
26                                     )
                                       )
27                                     )
                                       )
28                                     )

                                    1

FILED
JUN 6 , 2007
K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____
       Deputy Clerk

Plaintiff COUNTRYWIDE HOME LOANS, INC., (hereinafter "Plaintiff" or "Countrywide"), alleges as follows:

## PRELIMINARY ALLEGATIONS

1.    Countrywide Home Loans, Inc. ("Countrywide") is a New York corporation in good standing duly authorized to conduct mortgage lending, servicing, and other business in the State of California with its principal place of business in California.

2.    Countrywide is informed and believes, and thereon alleges, that at all times mentioned herein defendant Stewart Title Guaranty Company ("Stewart Title") is a corporation duly organized and existing under the laws of the State of Texas qualified and transacting business in California as a duly licensed title insurer.

3.    Countrywide is informed and believes, and thereon alleges, that at all times mentioned herein CHL Mortgage Group Inc.("CHL") was a duly licensed mortgage brokerage firm transacting business in the State of California.

4.    The true names and capacities of Cross-Defendants sued herein as Does 1 through 20, inclusive, are unknown to Countrywide, who therefore sues said Cross-Defendants by such fictitious names.  Countrywide is informed and believes, and thereon alleges, that each of the fictitiously named Cross-Defendants is responsible in some manner, means or degree for the occurrences and injuries sustained by Countrywide, or in some fashion has legal responsibility therefor.  Countrywide will seek leave to amend this Cross-Complaint to allege the true names and capacities of said Cross-Defendants when the same have been ascertained.

5.    Between approximately December, 2003, and December, 2004, at the request of CHL and for valuable consideration paid to CHL, or to its authorized

2

agents and representatives for CHL's account, Countrywide purchased and acquired all right, title, and beneficial interest in and to certain residential mortgage loans, together with the documentation therefor, including but not limited to all title policies pertaining to the real property security for said loans, and all right, title, and beneficial interest thereunder, including such legal and equitable interests in the real properties described in the respective deeds of trust for said mortgage loans, as necessary and sufficient to secure first priority repayment of same in full. The aforesaid rights and interests, including all documentation therefor, and all associated rights and interests, are collectively referred to hereinafter as the "Mortgage Loans."

6.     Among the Mortgage Loans purchased by Countrywide from CHL, was a Loan purportedly secured by a recorded, first priority deed of trust on the real property located at 1396 Tirol Drive, Incline Village, Nevada (the "Tirol Drive Property"). Said deed of trust (hereinafter the "Tirol Drive Deed of Trust") purportedly secured a promissory note in the principal sum of $490,000 (the "Tirol Drive Note"). The Tirol Drive Deed of Trust had been recorded in the records of Washoe County, Nevada, as Document No. 2957063, on or about November 20, 2003.

7.     Also included in the documentation for the Mortgage Loans was an policy of title insurance pertaining to the Tirol Drive Loan, dated November 20, 2003 and bearing Policy No. CL-2229-000426508, issued to CHL by Stewart Title on the Tirol Drive Property. A true and correct copy of said policy of title insurance (hereinafter the "Tirol Drive Policy") is hereto as Exhibit 1.

8.     The Tirol Drive Policy insures Countrywide, as successor insured to CHL, against all loss or damage incurred as a result, *inter alia*, of any defect in, invalidity

3

or unenforceability of, or priority of any lien or encumbrance over, Countrywide's lien of the mortgage on the Tirol Drive Property.

9.    The Tirol Drive Policy further provides that Stewart Title will pay all costs and expenses, including attorneys fees, incurred in defense of the lien of the mortgage on the Tirol Drive Property.

10.    On or about February 2, 2005, an involuntary petition for Chapter 11 bankruptcy protection for CHL was filed in the United States Bankruptcy Court for the Northern District of California, Case No. 05-40438. That bankruptcy case was converted to Chapter 7 on or about March 14, 2005, and is hereinafter referred to as the "Chapter 7 Case."

11.    In the Chapter 7 Case, on or about May 12, 2005, the Chapter 7 Trustee, John Kendall, initiated an adversary proceeding, Kendall v. Access lending et. al. (the "Adversary Proceeding".).  In the Adversary Proceeding, the Trustee sought to "quiet title" to several properties including the Tirol Drive Property.

### FIRST CAUSE OF ACTION

(Breach of Contract)

12.    Countrywide incorporates herein by this reference the allegations contained in Paragraphs 1 through 11 of this Complaint.

13.    Countrywide is informed and believes, and thereon alleges, that the Adversary Proceeding alleges the existence of various liens or encumbrances over and superior to Countrywide's lien of the mortgage on the Tirol Drive Property, or otherwise challenges the validity of Countrywide's deed of trust lien, and therefore constitutes defects in title (the "Title Defects") of the type contemplated to be covered by the Tirol Drive Policy.

4

14.     Upon learning of the aforesaid Title Defects, Countrywide gave notice thereof to Stewart Title and requested coverage and indemnification.

15.     Countrywide is informed and believes, and thereon alleges, that Stewart Title breached the terms of the Tirol Drive Policy by failing and refusing to provide coverage and indemnification under said Policy.

16.     Countrywide has performed all of its obligations under the Tirol Drive Policy except those excused by the conduct (or inaction) of Stewart Title and/or its agents.

17.     As a direct and proximate result of Stewart Title's breach of its obligations under the Policy, Countrywide has been damaged in an amount that has not yet been fully ascertained but includes, at a minimum, the amount of Countrywide's lien on the Tirol Drive.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

18.     Countrywide incorporates herein by reference the allegations contained in Paragraphs 1 through 11 and 13 of this Complaint.

19.     Upon learning of the aforesaid Title Defects, Countrywide gave notice thereof to Stewart Title and tendered defense of Countrywide's liens.

20.     Countrywide is informed and believes, and thereon alleges, that Stewart Title breached the terms of the Tirol Drive Policy by failing and refusing to provide a defense under said Policy.

5

21.   Countrywide has performed all of its obligations under the Tirol Drive Policy except those excused by the conduct (or inaction) of Stewart Title and/or its agents.

22.   As a direct and proximate result of Stewart Title's breach of its obligations under the Policy, Countrywide has been damaged in an amount that has not yet been fully ascertained but includes, at a minimum, costs and expenses, including reasonable attorneys' fees incurred in the defense of Countrywide's lien on the Tirol Drive Property.

## THIRD CAUSE OF ACTION

(Tortious Breach of Implied Covenant of Good Faith and Fair Dealing (Insurance Bad Faith)

23.   Countrywide incorporates herein by reference the allegations contained in Paragraphs 1 through 22 of this Complaint.

24.   As alleged above, Countrywide is a successor insured under the Tirol Drive Policy.

25.   Implied in the Tirol Drive Policy was a covenant by Stewart Title that it would act in good faith and do nothing which would deprive Countrywide of the benefits of the Tirol Drive Policy.  The covenant imposed on Stewart Title a duty to refrain from doing anything that would render performance of the obligations of the Tirol Drive Policy impossible, and also to do everything that the Tirol Drive Policy presupposes that it would do to accomplish the purpose of the contract.  The purpose of the Tirol Drive Policy was to protect Countrywide against losses from claims of superior liens on the Tirol Drive Property.

6

26.    Countrywide is informed and believes, and thereon alleges, that Stewart Title breached its obligation to act fairly and in good faith toward Countrywide by:

a.    Conscious and deliberate failure to discharge its contractual duties under the Tirol Drive Policy by unreasonably and without proper cause refusing to indemnify Countrywide despite Countrywide's entitlement to and timely claims for indemnification;

b.    Conscious and deliberate failure to provide a defense to the challenges to Countrywide's lien priority on the Tirol Drive Property despite Countrywide's entitlement to and timely tender of such defense;

c.    Unreasonably and without proper cause failing to investigate and evaluate Countrywide's claim thoroughly and inquire into all bases that might support coverage;

d.    Unreasonably and without proper cause performing a biased investigation designed to lead to a denial of coverage;

27.    As a direct and proximate result of Stewart Title's breach of the implied covenant of good faith and fair dealing, Countrywide has been damaged in an amount not yet fully ascertained but which includes, at a minimum the amount of Countrywide's lien on the Tirol Drive Property and Countrywide's costs and expenses, including reasonable attorneys fees, incurred to compel payment of benefits due under the Tirol Drive Policy.

28.    Countrywide is informed and believes, and thereon alleges, that the acts and conduct of Stewart Title described herein were done with a conscious disregard of Countrywide's rights and with a specific intent to injure Countrywide, such as to constitute fraud, oppression, and malice under California Civil Code Section 3294.

By virtue of Stewart Title's willful and wrongful conduct, Countrywide is entitled to punitive and exemplary damages as determined at trial.

WHEREFORE, Countrywide prays for judgment against Defendants, and each of them, as follows:

## ON THE FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

1.    General damages in an amount to be determined at trial, but not less than Four Hundred Ninety Thousand Dollars ($490,000); Prejudgment interest, at the legal rate, on Countrywide's damages, including attorneys' fees, from the time incurred until entry of judgment.

## ON THE SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

2.    General damages in an amount to be determined at trial, equal to the amount of costs and expenses, including attorneys fees, reasonably incurred by Countrywide to defend its liens against the claims of others;

3.    Prejudgment interest, at the legal rate, on Countrywide's damages, including attorneys' fees, from the time incurred until entry of judgment.

## ON THE THIRD CAUSE OF ACTION FOR TORTIOUS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (INSURANCE BAD FAITH)

4.    General damages in an amount to be determined at trial but not less than Four Hundred Ninety Thousand Dollars ($490,000);

5.    Attorneys fees in the amount reasonably incurred by Countrywide to defend its lien on the Tirol Drive Property against the claims of others;

6.    Attorneys fees in the amount reasonably incurred by Countrywide to compel payment of benefits due under the Tirol Drive Policy

8

7.    Prejudgment interest on Countrywide's damages, including attorneys' fees from the time incurred until entry of judgment.

8.    Punitive damages in an amount determined by the court to be just and proper;

## ON ALL CAUSES OF ACTION

9.    Costs of suit incurred herein; and

10.   Such other and further relief as this court deems just and proper.

Dated: June 5, 2007                    PFEIFER & REYNOLDS, LLP


By: _____

MICHAEL R. PFEIFER, ESQ.
JAMES P. FINERTY, ESQ.
LIBBY WONG, ESQ.
Attorneys for Countrywide Home Loans, Inc.

9

# EXHIBIT "1"

JAN. 24. 2005  9:43AM    STEWART TITLE-DEPT                    NO. 784    P. 3

with ALTA Endorsement - Form 1 Coverage

POLICY OF TITLE INSURANCE ISSUED BY

# S T E W A R T   T I T L E
## GUARANTY COMPANY

Batayeh
3731342I

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Unmarketability of the title;

4. Lack of a right of access to and from the land;

5. The invalidity or unenforceability of the lien of the in...



610   037313421   D1   001   001

6. The priority of any lien or encumbrance over the lien of the insured mortgage;

7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:

   (a) arising from any improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or

   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;

8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

9. Any assessments for street improvements under construction or completed at Date of Policy not excepted in Schedule B which now have gained or hereafter may gain priority over the lien of the insured mortgage.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

In witness whereof, Stewart Title Guaranty Company has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.

Signed by Contract

# S T E W A R T   T I T L E
GUARANTY COMPANY

Chairman of the Board

*Malcolm S. Morris*
President

Countersigned:

Authorized Countersignature
Stewart Title Northern Nevada
Agent ID # 28100A

**STEWART TITLE**
**P. O. Box 12400**
**Reno, NV 89510**

Serial No. CL2229-000426508

The JAN. 24. 2005 9:44AM  STEWART TITLE-DEPT.  NO. 784  P. 4

...policy and the Company will not pay loss or damage... attorney... loss or expenses which

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor, or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
       (i) to timely record the instrument of transfer; or (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

1. **DEFINITION OF TERMS.**
   The following terms when used in this policy mean:
   (a) "insured": the insured named in Schedule A. The term "insured" also includes
       (i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12 (c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);
       (ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;
       (iii) the parties designated in Sections 2(a) of these Conditions and Stipulations.
   (b) "insured claimant": an insured claiming loss or damage.
   (c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.
   (d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.
   (e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.
   (f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1 (a) (iv) of the Exclusions from Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.
   (g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE.**
   (a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insured; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.
   (b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.
   (c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:
       (i) the Amount of Insurance stated in Schedule A;
       (ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage, prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or
       (iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**
   The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4 (a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, and (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

JAN. 24. 2005  9:44AM  STEWART TITLE-DEPT                    NO. 784    P. 5

## SCHEDULE A

Order Number: 030514477                    Premium: $332.00

Date of Policy: November 20, 2003 at 3:24 p.m. Policy No.: CL-2229-000426508

Amount of Insurance: $490,000.00              Loan No.: 2005-11-1503

1. Name of Insured:

   CHL MORTGAGE GROUP INC.

2. The estate or interest in the land which is encumbered by the insured mortgage is:

   A FEE AS TO PARCEL 1
   AN EASEMENT AS TO PARCEL 2

3. Title to the estate or interest in the land is vested in:
   ED BATAYEH, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

4. The insured mortgage and assignments thereof, if any, are described as follows:
   A Deed of Trust to secure an indebtedness in the original
   amount stated herein, and/or other obligations secured
   thereby,

   Dated         : NOVEMBER 18, 2003
   Amount        : $490,000.00
   Trustor       : ED BATAYEH, A MARRIED MAN AS HIS SOLE
                   : AND SEPARATE PROPERTY
   Trustee       : STEWART TITLE
   Beneficiary   : CHL MORTGAGE GROUP INC.
   Recorded      : NOVEMBER 20, 2003
                   : as Document No. 2957063,
                   : Official Records of Washoe County, Nevada.

5. The land referred to herein is situated in the State of Nevada, County of Washoe,
   and is described as follows:

   SEE "LEGAL DESCRIPTION" ATTACHED

**STEWART TITLE**
Guaranty Company

1322(Rev. 6/77) (SCH - 1/23)

## LEGAL DESCRIPTION

Order No.:  030514477

The land referred to herein is situated in the State of Nevada, County of Washoe, described as follows:

PARCEL 1:

Unit C-215A of TYROLIAN VILLAGE UNIT NO. 4, a Townhouse, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on March 31, 1970, under Filing No. 170196, Official Records, as Tract Map No. 1155 and further described in Boundary Line Adjustment deed recorded September 22, 1994 as Document No. 1835045 and a Boundary Line Adjustment Survey Map No. 2776 filed in the office of the County Recorder of Washoe County, State of Nevada, on September 22, 1994 as Document No. 1835046 of Official Records.

An easement across the streets and Parcels A through J, as shown on the map of TYROLIAN VILLAGE UNIT NO. 1, a Townhouse, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on December 4, 1967, and Parcel M and streets as shown on the map of TYROLIAN VILLAGE UNIT NO. 2, a Townhouse, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on December 12, 1968, under Filing No. 131935, Official Records and the streets and Parcels N, O, P, Q and R as shown on the map of TYROLIAN VILLAGE UNIT NO. 3, a Townhouse, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on August 19, 1969, under Filing No. 151515, Official Records and the streets and Parcels U, V and W as shown on the map of TYROLIAN VILLAGE UNIT NO. 4, a Townhouse, according to the map thereof, filed in the office of the Washoe County Recorder, State of Nevada, on March 31, 1970, under Filing No. 170196, Official Records, and the streets and Parcels S and T of TYROLIAN VILLAGE UNIT NO. 5, a Townhouse, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on January 6, 1970, under Filing No. 163711, Official Records.

APN: 126-590-11

JAN. 24. 2005 9:44AM STEWART TITLE-DEPT                    NO. 784    P. 7

## SCHEDULE B
## PART I

Policy No.: CL-2229-000426508

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of:

1. The lien, if any, of supplemental taxes, assessed pursuant to provisions adopted by the Nevada Legislature, and as disclosed by the Nevada Revised Statutes.

2. Any additional liens which may be levied by reason of said premises being within the boundaries of the Incline Village General Improvement District.

3. Easements, dedications, reservations, provisions, relinquishments, recitals, building set back lines, certificates, and any other matters as provided for or delineated on the Subdivision map of TYROLIAN VILLAGE UNIT NO. 4.

   Reference is hereby made to said Plat for particulars. If one is not included herewith, one will be furnished upon request.

4. Covenants, Conditions and Restrictions contained in a Declaration of Restrictions,
   Recorded        : June 14, 1967
                   : in Book 259, Page 336, as Document No. 89840,
                   : Official Records of Washoe County, Nevada.

5. Covenants, Conditions and Restrictions contained in a Deed
   Recorded        : June 30, 1967
                   : in Book 262, Page 498, as Document No. 91156,
                   : Official Records of Washoe County, Nevada.

6. Covenants, Conditions and Restrictions contained in a Declaration of Restrictions,
   Recorded        : April 16, 1970
                   : in Book 456, Page 654, as Document No. 171585,
                   : Official Records of Washoe County, Nevada.

Said restrictions incorporate the following:

A.   Covenants, conditions and restrictions contained in Declaration of Reciprocal Covenants by TYROLIAN VILLAGE, INC., dated June 26, 1968, recorded June 27, 1968, in Book 328, Page 695, as Document No. 118590, Official Records.

-1-                          Continued on next page

**STEWART TITLE**
Guaranty Company

JAN. 24. 2005  9:45AM     STEWART TITLE-DEPT                         NO. 784   P.  8

Attached to and made a part of Stewart Title Guaranty Company Policy
No. CL-2229-000426508
Continuation of Schedule B Part I

B.  Covenants, conditions and restrictions contained in
Declaration of Covenants, Conditions and Restrictions by
TYROLIAN VILLAGE, INC., dated June 26, 1968, recorded June
27, 1968 in Book 328, Page 699, as Document No. 118591,
Official Records.

Said Covenants, Conditions and Restrictions have been
modified by an instrument,
Recorded         : April 22, 1969
                 : in Book 383, Page 404, as Document No. 141759,
                 : Official Records of Washoe County, Nevada.

Said Covenants, Conditions and Restrictions have been
modified by an instrument,
Recorded         : June 25, 1970
                 : in Book 471, Page 694, as Document No. 177526,
                 : Official Records of Washoe County, Nevada.

Said Covenants, Conditions and Restrictions have been
modified by an instrument,
Recorded         : March 31, 1972
                 : in Book 624, Page 602, as Document No. 239412,
                 : Official Records of Washoe County, Nevada.

Notice of Association charges, pursuant to said Covenants,
Conditions and Restrictions
Recorded         : August 15, 1979
                 : in Book 1418, Page 974, as Document No 623445,
                 : Official Records of Washoe County, Nevada.

An Amendment to said Notice of Association Charges
Recorded         : June 18, 1985
                 : in Book 2185, Page 190, as Document No. 1004454,
                 : Official Records of Washoe County, Nevada

An Amendment to said Notice of Association Charges
Recorded         : March 31, 1989
                 : in Book 2888, Page 9, as Document No. 1314395,
                 : Official Records of Washoe County, Nevada

-2-

Continued on next page

Attached to and made a part of Stewart Title Guaranty Company Policy
No. CL-2229-000426508
Continuation of Schedule B Part I

    An Amendment to said Notice of Association Charges
    Recorded         : November 18, 1991
                 : in Book 3364, Page 870, as Document No. 1524356,
                 : Official Records of Washoe County, Nevada.

    Said Covenants, Conditions and Restrictions have been
    modified by an instrument,
    Recorded         : December 2, 1998
                 : in Book 5486, Page 268, as Document No. 2281574,
                 : Official Records of Washoe County, Nevada.

7. Said Covenants, Conditions and Restrictions have been
    modified by an instrument,
    Recorded         : August 21, 2001
                 : as Document No. 2588020,
                 : Official Records of Washoe County, Nevada.

8. An easement affecting a portion of said land for the
    purposes stated herein, together with incidental rights
    thereto,
    Purpose          : garage encroachments
    Recorded         : November 14, 1996
                 : in Book 4721, Page 662, as Document No. 2047646,
                 : Official Records of Washoe County, Nevada.
    And Recorded   : December 4, 1996
                 : in Book 4737, Page 404, as Document No. 2053682,
                 : Official Records of Washoe County, Nevada.
    And Recorded   : December 28, 1998
                 : in Book 5515, Page 936, as Document No. 2290377,
    Affects          : Official Records of Washoe County, Nevada.
                 : Common area

9. A Revocable License to Use Real Property
    Purpose          : for garage encroachment
    Recorded         : July 20, 1998
                 : in Book 5316, Page 418, as Document No. 2232943,
                 : Official Records of Washoe County, Nevada.
    Affects          : Common area

-3-                     Continued on next page

Attached to and made a part of Stewart Title Guaranty Company Policy
No. CL-2229-000426508
Continuation of Schedule B Part I


An instrument entitled "DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICTIONS FOR COVERAGE ASSIGNMENT ("DEED
RESTRICTION")
Recorded                : AUGUST 19, 1994
                        : in Book 4133, Page 755, as Document No. 1825953,
                        : Official Records of Washoe County, Nevada

10. The effect of a record of survey map which purports to show
    said land and other lands and all matters set forth thereon.
    Map No.             : 2776
    Recorded            : September 22, 1994
                        : as Document No. 1835046,
                        : Official Records of Washoe County, Nevada.

Reference is herein made to said plat for particulars.  If
one is not included herewith, one will be furnished upon
request.


-4-

## SCHEDULE B
## PART II

Policy No.: CL-2229-000426508

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or charge of the insured mortgage upon said estate or interest:

NONE

**STEWART TITLE**
Guaranty Company

134 (Rev. 8/87)

JAN. 24. 2005 9:45AM-4-ENSTEWART TITLE-DEPT ON PLAN                    NO. 784    P. 12

ENDORSEMENT ATTACHED TO AND MADE A PART
OF MORTGAGEE'S POLICY OF TITLE INSURANCE
SERIAL NUMBER    2229-00042650 ISSUED BY

No. 030514477

Loan No.

Charge $ 25.00

# S T E W A R T   T I T L E
## GUARANTY COMPANY
### HEREIN CALLED THE COMPANY

The insurance afforded by this endorsement is only effective if the land is used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at the Date of Policy, is recorded in those public records established under state statutes at the Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at the Date of Policy, except environmental protection liens provided for by the following state statutes:

NONE

For the purposes of this paragraph (b), a statute shall be deemed a "state statute" only insofar as it provides for an environmental protection lien arising or created by reason of matters other than those listed under "Excluded Matters" below.

#### Excluded Matters

(i) plant diseases, pests, or rodents;

(ii) water drainage or flood control, mining reclamation, weed abatement, or unfit buildings (where the applicable statutory provisions do not expressly relate to pollution or to hazardous or toxic wastes or substances);

(iii) snow or ice removal;

(iv) charges, taxes or assessments authorized by any state statute to be imposed by local political subdivisions or districts of the state (except where such charges, taxes or assessments, by express provisions of the applicable statute, relate to pollution or to hazardous or toxic wastes or substances).

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements, thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Signed under seal for the Company, but this Endorsement is to be valid only when it bears an authorized countersignature.

## S T E W A R T   T I T L E
### GUARANTY COMPANY

Chairman of the Board

President

Stewart Title Northern Nevada

Countersigned:

Authorized Countersignature

ALTA ENDORSEMENT - Form 8.1 (Environmental Protection Lien) (3-12-85)

9930-000320969

JAN. 24. 2005   9:45AM    STEWART TITLE-DEPT                 NO. 784   P. 13

ENDORSEMENT ATTACHED TO AND MADE A PART
OF MORTGAGEE'S POLICY OF TITLE INSURANCE
SERIAL NUMBER  2229-0004265 0 8 ISSUED BY

No.030514477

Loan No. 2005-11-1503                                    Charge $ 0.00

# S T E W A R T   T I T L E
## GUARANTY COMPANY
### HEREIN CALLED THE COMPANY

The Company hereby insures against loss which said insured shall sustain by reason of the following matters:
1. Any incorrectness in the assurance which the Company hereby gives:

   (a) That there are no covenants, conditions, or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired;
   (b) That there are no present violations on said land of any enforceable covenants, conditions, or restrictions.
   (c) That, except as shown in Schedule B, there are no encroachments of buildings, structures, or improvements, located on said land onto adjoining lands, nor any encroachments onto said land of buildings, structures, or improvements located on adjoining lands.

2. (a) Any future violations on said land of any covenants, conditions or restrictions occurring prior to acquisition of title to said estate or interest by the insured, provided such violations result in loss or impairment of the lien of the mortgage referred to in Schedule A, or result in loss or impairment of the title to said estate or interest if the insured shall acquire such title in satisfaction of the indebtedness secured by such mortgage;
   (b) Unmarketability of the title of said estate or interest by reason of any violations on said land, occurring prior to acquisition of title to said estate or interest by the insured, of any covenants, conditions, or restrictions.

3. Damage to existing improvements, including lawns, shrubbery or trees
   (a) which are located or encroach upon that portion of the land subject to any easement shown in Schedule B, which damage results from the exercise of the right to use or maintain such easement for the purposes for which the same was granted or reserved;
   (b) resulting from the exercise of any right to use the surface of said land for the extraction or development of the minerals excepted from the description of said land or shown as a reservation in Schedule B.

4. Any final court order or judgment requiring removal from any land of any encroachment shown in Schedule B.

Wherever in this endorsement any or all of the words "covenants, conditions or restrictions" appear they shall not be deemed to refer to or include the terms covenants and conditions contained in any lease referred to in Schedule A.

For purposes of this endorsement, the words "covenants", "conditions" or "restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection, except to the extent that a notice of a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy and is not excepted in Schedule B.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements, thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the Policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Signed under seal for the Company, but this Endorsement is to be valid only when it bears an authorized countersignature.

### S T E W A R T   T I T L E
#### GUARANTY COMPANY

_Chairman of the Board_                                     _President_

Countersigned:

_Authorized Countersignature_
**Stewart Title Northern Nevada**

2514-000466562

CLTA FORM 100 Rev. 3-25-92

JAN. 24. 2005  9:46AM    STEWART TITLE-DEPT                          NO. 784    P. 14

ENDORSEMENT ATTACHED TO AND MADE
PART OF POLICY OF TITLE INSURANCE
SERIAL NUMBER 2229-000426508    ISSUED BY

No. 030514477
Loan No. 2005-11-1503                                      Charge $ 0.00

# STEWART TITLE
## GUARANTY COMPANY
### HEREIN CALLED THE COMPANY

The Company assures the insured that at the date of this policy there is located on

said land **Single Family Residence**.

known as **1396 Tirol Drive**
        **Incline Village, Nevada**

and that the map attached to this policy shows the correct location and dimensions of said land according to those records which under the recording laws impart constructive notice as to said land.

The Company hereby insures said insured against loss which said insured shall sustain in the event that the assurance herein shall prove to be incorrect.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements, thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Signed under seal for the Company, but this Endorsement is to be valid only when it bears an authorized countersignature.

# STEWART TITLE
## GUARANTY COMPANY

Chairman of the Board                                          President

Countersigned:

Authorized Signature
**Stewart Title Northern Nevada**

CLTA Form 116.0

2541-000446686

JAN. 24. 2005  9:46AM    STEWART TITLE-DEPT                    NO. 784    P. 15



Description: Washoe,NV Tract Map 50.1155 Page: 2 of 4
Order: 23132 Comment:

1155A

INCLINE VILLAGE INC.

INCLINE VILLAGE INC.

BERNE COURT

TIROL

INCLINE VILLAGE INC.

TYROLIAN VILLAGE
UNIT NO. 4

PORTION OF S.1/2 OF SECTION 34,
TOWNSHIP 16 NORTH, RANGE 18 EAST, M.D.B.&M.,
WASHOE COUNTY, NEVADA
VILLA & VILLARONA, INC.
SHEET 2 OF 4 SHEETS

1155 A

1155 A

THIS MAP SHOULD BE USED FOR REFERENCE PURPOSES ONLY. NO LIABILITY
IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. PARCELS MAY NOT
COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.

Description: Washoe,NV Tract Map 50.1155 Page: 3 of 4
Order: 23132 Comment:



TYROLIAN VILLAGE
UNIT NO. 4

PORTION OF NE¼ OF SECTION 14, TOWNSHIP 16 NORTH, RANGE 18 EAST, M.D.B.&M.
WASHOE COUNTY, NEVADA

STILES & PINSENT INC.    CONSULTING CIVIL ENGINEERS
MARCH 1970
SHEET 3 OF 4 SHEETS

THIS MAP SHOULD BE USED FOR REFERENCE PURPOSES ONLY. NO LIABILITY
IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. PARCELS MAY NOT
COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.

JAN. 24. 2005  9:46AM   STEWART TITLE-DEPT.                    NO. 784   P. 18

Description: Washoe,NV Tract Map 50.1165 Page: 4 of 4
Order: 23132 Comment:



TYROLIAN VILLAGE
UNIT NO. 4

THIS MAP SHOULD BE USED FOR REFERENCE PURPOSES ONLY. NO LIABILITY
IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. PARCELS MAY NOT
COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.

JAN. 24. 2005  9:46AM    STEWART TITLE-DEPT                    NO. 784    P. 19



JAN. 24. 2005  9:47AM    STEWART TITLE-DEPT                    NO. 784    P. 20

Stewart Title Guaranty Company, Stewart Title Insurance Company, Stewart Title Insurance Company of Oregon, National Land Title Insurance Company, Arkansas Title Insurance Company, Charter Land Title Insurance Company

### Privacy Policy Notice

# PURPOSE OF THIS NOTICE

Title V of the Gramm-Leach-Bliley Act, (GLBA) generally prohibits any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a nonaffiliated third party unless the institution provides you with a notice of its privacy policies and practices, such as the type of information that it collects about you and the categories of persons or entities to whom it may be disclosed. In compliance with the GLBA, we are providing you with this document, which notifies you of the privacy policies and practices of Stewart Title Guaranty Company, Stewart Title Insurance Company, Stewart Title Insurance Company of Oregon, National Land Title Insurance Company, Arkansas Title Insurance Company, Charter Land Title Insurance Company.

We may collect nonpublic personal information about you from the following sources:
~ Information we receive from you, such as on applications or other forms.
~ Information about your transactions we secure from our files, or from our affiliates or others.
~ Information we receive from a consumer reporting agency.
~ Information that we receive from others involved in your transaction, such as the real estate agent or lender.

Unless it is specifically stated otherwise in an amended Privacy Policy Notice, no additional nonpublic personal information will be collected about you.

We may disclose any of the above information that we collect about our customers or former customers to our affiliates or to non affiliated third parties as permitted by law.

We may also disclose this information about our customers or former customers to the following types of nonaffiliated companies that perform marketing services on our behalf or with whom we have joint marketing agreements:
~ Financial Service Providers such as companies engaged in banking, consumer finance, securities and insurance.

## WE DO NOT DISCLOSE ANY NONPUBLIC PERSONAL INFORMATION ABOUT YOU WITH ANYONE FOR ANY PURPOSE THAT IS NOT SPECIFICALLY PERMITTED BY LAW.

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

CONDITIONS AND STIPULATIONS Continued
(continued from reverse side of Policy Face)

**1. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest of the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5. PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or confirm any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

**7. DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

(continued and concluded on reverse side)

(ALTA Loan Policy)

JAN. 24. 2005  9:47AM    STEWART TITLE-DEPT                    NO. 784    P. 22

Conditions and stipulations continued and concluded

**8. LIMITATION OF LIABILITY.**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS.**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant permits the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at P.O. Box 2029, Houston, Texas 77252-2029. If you will send a copy of the policy, it will expedite and aid the prompt handling of claims hereunder.

SUPERIOR COURT – MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA, 94553

COUNTRYWIDE HOME LOANS VS. STEWART TITLE

NOTICE OF CASE MANAGEMENT CONFERENCE                CIVMSC07-01108

1.  NOTICE: THE CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED FOR:

DATE:  10/24/07        DEPT:  30        TIME:   8:30

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK
STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES
SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY
OF RECORD MUST APPEAR.

2.  You may stipulate to an earlier Case Management Conference.  If
all parties agree to an early Case Management Conference, please
contact the Court Clerk's Office at (925)957-5794 for Unlimited Civil
cases and (925)957-5791 for Limited Civil cases for assignment of an
earlier date.

3.  You must be familiar with the case and be fully prepared to par-
ticipate effectively in the Case Management Conference and to discuss
the suitability of this case for the EASE Program, private mediation,
binding or non-binding arbitration, and/or use of a Special Master.

4.  At any Case Management Conference the court may make pretrial
orders including the following:

    a.  an order establishing a discovery schedule
    b.  an order referring the case to arbitration
    c.  an order transferring the case to limited jurisdiction
    d.  an order dismissing fictitious defendants
    e.  an order scheduling exchange of expert witness information
    f.  an order setting subsequent conference and the trial date
    g.  an order consolidating cases
    h.  an order severing trial of cross-complaints or bifurcating
        issues
    i.  an order determining when demurrers and motions will be filed

                            SANCTIONS
If you do not file the Case Management Conference Questionnaire or
attend the Case Management Conference or participate effectively in
the Conference, the court may impose sanctions (including dismissal of
the case and payment of money).

        Clerk of the Superior Court of Contra Costa County
I declare under penalty of perjury that I am not a party to this
action, and that I delivered or mailed a copy of this notice to the
person representing the plaintiff/cross-complainant.

Dated:  06/07/07        _____
                            C. JACALA, Deputy Clerk

1

## PROOF OF SERVICE

2      I declare that I am employed in the County of Contra Costa, State of California. I am over the

3 age of eighteen (18) years and not a party to the within entitled case, and my business address is Alborg, Veiluva & Epstein LLP, 200 Pringle Avenue, Suite 410, Walnut Creek, California 94596.  On the date set forth below I served the foregoing document described as **NOTICE OF REMOVAL OF ACTION UNDER**

4 **28 U.S.C. §1441(b) (DIVERSITY)** on interested parties in this action in the manner(s) indicated below:

5

6 [x] **(OFFICE MAIL)** placing true and correct copies thereof enclosed in a sealed envelope(s), with first class postage fully prepaid, for collection and mailing at 200 Pringle Avenue, Suite 410, Walnut

7 Creek, California 94596 addressed as set forth below.  I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal

8 Service.  Correspondence so placed would be deposited with the United States Postal Service that same day in the ordinary course of business.

9

10 [ ] **(FACSIMILE)** transmission to a facsimile machine maintained by the person(s) on whom it is served at the facsimile machine telephone number as last given by that person(s) on any document filed in the case and served on the party making service.

11

12 [ ] **(OVERNIGHT DELIVERY)** placing true and correct copies thereof enclosed in a sealed envelope(s), for overnight delivery, in a box or other facility regularly maintained by an express service carrier, or delivered to an authorized courier or driver authorized by that express service

13 carrier with delivery fees paid or provided for, addressed to the person(s) on whom it is to be served, at the office address as last given by that person(s) on any document filed in the case and served on the party making service or at that party's place of residence.

14

15 **Attorneys for Plaintiff Countrywide Home Loans, Inc.**

Michael R. Pfeifer, Esq.
Pfeifer & Reynolds

16 765 The City Drive, Suite 380
Orange, CA 92868

17 Tel:     714-703-9300
Fax:     714-703-9303

18

19      I declare that the foregoing is true and correct and that this declaration was executed in Walnut Creek, California on **August 7, 2007**.

20

21 Jan Baerwald

22

23

24

25

26

27

28